

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| KEVIN ERICKSON, as Personal Representative of the Estate of Ryan Erickson, <br><br> Appellant, <br><br> v. <br><br> AMERICA'S WHOLESALE LENDER, a New York corporation, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., an inactive Washington corporation, U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR GSAA HOME EQUITY TRUST 2006-1, QUALITY LOAN SERVICE CORP. OF WASHINGTON and ANY AND ALL PERSONS CLAIMING ANY RIGHT, TITLE OR INTEREST IN THE PROPERTY DESCRIBED HEREIN THROUGH ANY DEFENDANT ABOVE NAMED, <br><br> Respondents. | DIVISION ONE <br><br> No. 77742-4-I <br><br> UNPUBLISHED OPINION <br><br><br><br><br><br><br><br><br><br><br><br> FILED: April 16, 2018 |

DWYER, J.— Kevin Erickson, the personal representative of his brother's estate, appeals from the trial court's order entering summary judgment in favor of U.S. Bank National Association as Trustee for GSAA Home Equity Trust 2006-1 (US Bank) and dismissing his quiet title action. On appeal, Kevin[1] contends that US Bank's foreclosure action on Ryan's estate's property is time barred by the

---

[1] For the sake of clarity, we will refer to Kevin Erickson and his brother Ryan Erickson by their first names.

statutory limitation period applicable to agreements in writing. Kevin also contends that US Bank's foreclosure action is time barred because US Bank and its predecessor in interest accelerated the payments due on the loan, causing the statutory limitation period on the entire debt to begin to run prematurely. Finally, Kevin contends that US Bank is time barred from enforcing payment of the loan because, he asserts, incomplete nonjudicial foreclosure proceedings do not toll the statutory limitation period. None of Kevin's claims have merit. We affirm.

I

The facts of this case are not in dispute. Kevin is the personal representative of the estate of his deceased brother, Ryan Erickson. On October 26, 2005, Ryan obtained a home loan from America's Wholesale Lender. Ryan signed a promissory note when he obtained the loan. The note required that Ryan make monthly installment payments over 30 years with the debt maturing on November 1, 2035. As security for the loan, Ryan signed a deed of trust on the real property.

The loan was originated by Countrywide Home Loans Incorporated and was later sold on the secondary mortgage market and placed into a securitized trust. US Bank is the current trustee of the trust. Countrywide Home Loans Servicing LP (Countrywide) is the servicer of Ryan's home loan on behalf of the holder of the promissory note.

By autumn of 2007, Ryan had fallen behind on his monthly payments. On October 17, Countrywide sent Ryan a "Notice of Default and Acceleration." The notice read, in pertinent part:

-2-

> If the default is not cured on or before November 16, 2007, the mortgage payments **will be accelerated** with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated at that time. As such, the failure to cure the default may result in the foreclosure and sale of your property.

Ryan continued to miss payments and was sent a second "Notice of Default and Acceleration" on December 17, 2007. The second notice contained the same language as the first notice, except that Ryan was given until January 16, 2008 to cure the default.

On March 18, 2008, Countrywide sent Ryan a "Notice of Trustee's Sale" scheduled for June 20. On March 28, Ryan signed a five-month "Repayment Plan Agreement."

When Ryan continued to miss payments, Countrywide sent him a third notice, entitled "Notice of Intent to Accelerate" on September 17, 2008. This notice contained the same language as the two earlier notices of default and acceleration, except that Ryan was given until October 17 to cure the default. When Ryan failed to cure the default, Countrywide recorded four more notices of trustee's sale between January 5, 2009 and June 25, 2015. A foreclosure sale was never held.

Ryan died. On October 6, 2015, Kevin, on behalf of Ryan's estate, filed a complaint against US Bank and its predecessors in interest seeking to quiet title to the property. Later, Kevin moved for summary judgment. In response, US Bank opposed Kevin's motion for summary judgment and cross-moved for summary judgment. The trial court granted summary judgment in favor of US Bank and dismissed Kevin's quiet title claim.

II

Kevin contends that the trial court erred by denying his motion for summary judgment and dismissing his quiet title action. This is so, he asserts, because the applicable statutory limitation period regarding US Bank's ability to enforce payment of the loan obligation had expired.

We review an order granting summary judgment de novo, performing the same inquiry as the trial court. Nichols v. Peterson Nw., Inc., 197 Wn. App. 491, 498, 389 P.3d 617 (2016). In doing so, we draw "all inferences in favor of the nonmoving party." U.S. Oil & Ref. Co. v. Lee & Eastes Tank Lines, Inc., 104 Wn. App. 823, 830, 16 P.3d 1278 (2001). "Summary judgment is proper if the record shows that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." U.S. Oil & Refining Co., 104 Wn. App. at 830.

A

Kevin first contends that US Bank's foreclosure action on his property is time barred because more than six years have passed since Ryan first defaulted on his loan payments. We disagree.

An action upon a contract or agreement in writing must be commenced within six years. RCW 4.16.040. "As an agreement in writing, [a] deed of trust foreclosure remedy is subject to a six-year statute of limitations." Edmundson v. Bank of Am., NA, 194 Wn. App. 920, 927, 378 P.3d 272 (2016).

Washington law distinguishes between demand promissory notes and installment promissory notes. Edmundson, 194 Wn. App. at 927-32. "'[A]

-4-

demand [promissory] note is payable immediately on the date of its execution.'" Edmundson, 194 Wn. App. at 929 (quoting GMAC v. Everett Chevrolet, Inc., 179 Wn. App. 126, 135, 317 P.3d 1074 (2014)). As such, the statutory limitation period begins to run on a demand note when it is executed. Walcker v. Benson & McLaughlin, P.S., 79 Wn. App. 739, 742, 904 P.2d 1176 (1995). An installment promissory note, on the other hand, is payable in installments and matures on a future date. See Edmundson, 194 Wn. App. at 929; see also Herzog v. Herzog, 23 Wn.2d 382, 388, 161 P.2d 142 (1945). "'[W]hen recovery is sought on an obligation payable by installments, the statute of limitations runs against each installment from the time it becomes due; that is, from the time when an action might be brought to recover it.'" Edmundson, 194 Wn. App. at 930 (quoting Herzog, 23 Wn.2d at 388).

Here, Ryan signed a promissory note payable in monthly installments over 30 years that fully matures on November 1, 2035. Thus, the present note is an installment note and the six-year period of limitation does not begin to run on the entire debt until the debt fully matures in 2035. Accordingly, US Bank's foreclosure on Ryan's property is timely because the statutory limitation period applicable to the entire loan obligation has not yet started to run and the action was brought within six years of the missed monthly installment payments. There was no error.

B

Kevin next contends that Countrywide accelerated the payments due on the loan, causing the statutory limitation period to start accruing on the date that

the loan was accelerated. This is so, he asserts, because the three notices that Countrywide sent to Ryan set forth that the loan "will be accelerated" if Ryan did not cure the default on the loan. We disagree.

i

Our Supreme Court has held "that even if the provision in an installment note provides for the automatic acceleration of the due date upon default, mere default alone will not accelerate the note." A. A. C. Corp. v. Reed, 73 Wn.2d 612, 615, 440 P.2d 465 (1968). "Some affirmative action is required, some action by which the holder of the note makes known to the payors that he intends to declare the whole debt due." Weinberg v. Naher, 51 Wash. 591, 594, 99 P. 736 (1909).

> [A] provision hastening the date of maturity of the whole debt is for the benefit of the payee, and if he does not manifest any intention to claim it, before tender is actually made, there is in law no default such as will cause the maturity of the debt before the regular time provided in the agreement.

Coman v. Peters, 52 Wash. 574, 578, 100 P. 1002 (1909).

Here, Countrywide sent Ryan three notices warning him that the entire debt would be accelerated if he failed to cure his default. The three notices read: "If the default is not cured on or before [date], the mortgage payments **will be accelerated** with the full amount remaining accelerated and becoming due and payable in full, and foreclosure proceedings will be initiated at this time." Countrywide did not take an affirmative action that indicated that the payments on the loan had been accelerated. Indeed, Countrywide neither declared the entire debt due nor refused to accept installment payments. See, e.g., Rodgers

v. Rainier Nat'l Bank, 111 Wn.2d 232, 757 P.2d 976 (1988) (trustee accelerated payments due on the loan by refusing partial payment and demanding principal and interest in full); Jacobson v. McClanahan, 43 Wn.2d 751, 264 P.2d 253 (1953) (lender accelerated payments due on the loan by giving notice of default and refusing to accept subsequent installment payments).

The notices simply informed Ryan of a future contingent event. For that event—acceleration of the entire debt—to take place, Countrywide had to take an affirmative action manifesting its intent to do so. Because this did not happen, Ryan's loan obligations were not accelerated.

ii

The deed of trust that Ryan signed as security for the loan requires the lender to provide notice before exercising its right to accelerate the loan. The deed of trust reads:

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument. . . . If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and/or any other remedies permitted by Applicable Law.

The plain language of the deed of trust demonstrates that the notices sent to Ryan were pre-acceleration notices, as required by the loan documents. They did not, by themselves, cause the loan to be accelerated.

iii

In addition, the deeds of trust act[2] "precludes the creditor from enforcing the election [to accelerate a loan] prior to the eleventh day before the date of the trustee's sale." Meyers Way Dev. Ltd. P'ship v. Univ. Sav. Bank, 80 Wn. App. 655, 669, 910 P.2d 1308 (1996). The act sets forth, in pertinent part, that "[a]t any time prior to the eleventh day before the date set by the trustee for the sale in the recorded notice of sale . . . the borrower . . . shall be entitled to cause a discontinuance of the sale proceedings by curing the default or defaults set forth in the notice." RCW 61.24.090(1). In this way, the legislature manifested a policy choice in favor of allowing for debtors to more easily cure their defaults. We must honor this policy choice.

Here, neither US Bank nor its predecessor in interest ever took action to accelerate the loan within 11 days of a trustee's sale. Contrary to Kevin's argument, RCW 61.24.090(1) precluded the debt from being accelerated at the time of the mailing of the notices at issue. For this reason, also, Kevin's argument is unavailing.

The trial court correctly ruled that the debt was never accelerated.

C

Kevin next contends that incomplete nonjudicial foreclosure proceedings do not toll the statutory limitation period and, consequently, US Bank is unable to collect missed payments dating back to July 1, 2008, the date that Ryan stopped making payments on the loan. We disagree.

---

[2] Ch. 61.24 RCW.

A trustee may continue a foreclosure sale for "a period or periods not exceeding a total of one hundred twenty days." RCW 61.24.040(6). We have held that the statutory limitation period applicable to enforcing payment of a loan is tolled during the duration of a foreclosure proceeding up to 120 days after the original sale date. Bingham v. Lechner, 111 Wn. App. 118, 129-31, 45 P.3d 562 (2002); accord Albice v. Premier Mortg. Servs. of Wash., Inc., 157 Wn. App. 912, 927-28, 239 P.3d 1148 (2010). The statutory limitation period is tolled for 120 days after the original sale date even when the trustee does not exercise his ability to continue the sale. Bingham, 111 Wn. App. at 131 (trustee's "failure to [continue the sale] restarted the statute of limitations either on . . . the date scheduled for the foreclosure or 120 days thereafter").

Here, Countrywide recorded four notices of trustee's sale after Ryan entered into a repayment plan with Countrywide. The first trustee's sale notice was recorded on January 5, 2009, with a sale date of April 3. The second trustee's sale notice was recorded on July 14, 2010, with a sale date of October 15. The third trustee's sale notice was recorded on December 10, 2014, with a sale date of April 10, 2015. The fourth trustee's sale notice was recorded on June 25, 2015 with a sale date of October 23, 2015. The fourth sale was stayed pending the resolution of the instant quiet title action.

Because the original sale date for the December 10, 2014 notice was April 10, 2015, which was fewer than 120 days before June 25, 2015, the statutory limitation period was effectively tolled starting on December 10, 2014. There were 2,353 days between July 1, 2008 and December 10, 2014, or six years, five

months, and nine days. The January 5, 2009 and July 14, 2010 notices of trustee's sale collectively tolled the limitation period for 421 days, or a little over a year. Thus, as calculated pursuant to the law, fewer than six years have elapsed since the missed payment on July 1, 2008. Accordingly, US Bank is entitled to recover all missed payments on Kevin's promissory note and deed of trust dating back to July 1, 2008.

## III

Finally, both parties request an award of attorney fees pursuant to both the attorney fee provisions of the promissory note and the deed of trust, and RCW 4.84.330. RCW 4.84.330 sets forth:

> [When a] contract or lease specifically provides that attorneys' fees and costs, which are incurred to enforce the provisions of such contract or lease, shall be awarded to one of the parties, the prevailing party, whether he or she is the party specified in the contract or lease or not, shall be entitled to reasonable attorneys' fees in addition to costs and necessary disbursements.

The promissory note provides for attorney fees to be awarded to the note holder "[i]f the Note Holder has required [the recipient of the note] to pay immediately in full." In other words, the promissory note provides for an award of attorney fees if the note holder accelerates the loan. Because we have determined that US Bank did not accelerate the loan, this provision does not give US Bank an entitlement to an award of attorney fees.

The deed of trust sets forth that the "[l]ender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument." In his complaint, Kevin asserted that US Bank's "Deed of Trust is an impermissible cloud and encumbrance on

the title for a debt that is not collectible." Moreover, Kevin prayed for a judgment "forever barr[ing] [US Bank] from having or asserting any right, title, estate, lien, or interest in or to the hereinabove described property." Thus, the present action is an action regarding the enforceability of the terms of the deed of trust. US Bank is the prevailing party. Accordingly, US Bank is entitled to an award of attorney fees and costs pursuant to the applicable provision of the deed of trust. Upon a proper application, a commissioner of our court will make a suitable award.

Affirmed.

We concur:

Leach, J.

Dwyer, J.

Becker, J.