IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| GREGORY E. GRAHN and SUSAN M. GRAHN, husband and wife, | ) ) ) ) | No. 80107-4-I |
| Appellants, | ) ) | |
| v. | ) ) | |
| THE BANK OF NEW YORK MELLON CORPORATION, as Trustee for the Certificate Holders of CWALT, INC., Alternative Loan Trust 2007-9T1 Mortgage Pass-Through Certificates Series 2007-9T1, | ) ) ) ) ) ) ) | UNPUBLISHED OPINION |
| Respondent. | ) ) | |
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; NISQUALLY BLUFF HOMEOWNERS' ASSOCIATION, | ) ) ) ) | |
| Defendants. | ) ) | |

VERELLEN, J. — In this declaratory judgment action to quiet title, Gregory
and Susan Grahn contend that Bank of New York Mellon Trust (BNY) is an
ineligible beneficiary of a deed of trust for lack of any interest in the underlying
note. Because a declaration from the loan service provider adequately establishes
that BNY is the holder of the note, it is a lawful beneficiary.

Grahn also contends that after the note and deed of trust were "split," the debt was subject to the bankruptcy order discharging unsecured debts, but he fails to provide persuasive authority that the split-the-note theory has any application here.

Grahn contends the six-year statute of limitations has expired because the installment note was accelerated in 2009. But the mere notice of intent to accelerate did not accomplish an acceleration triggering the statute of limitations.

Finally, Grahn contends BNY is judicially estopped to deny it lacks any interest in the underlying deed of trust, but he fails to satisfy the requirements of judicial estoppel including clearly inconsistent positions and that the trial court accepted the allegedly initial inconsistent position.

Because Grahn fails to establish any basis for relief on appeal, we affirm the trial court decision that BNY has a valid interest in the deed of trust and the dismissal of Grahn's request to quiet title.

## FACTS

In February 2007, Grahn signed an installment promissory note for $512,000, payable to Kitsap Bank. The note was secured by a deed of trust on a residence. Kitsap Bank assigned "all beneficiary interests" under the deed of trust to Mortgage Electronic Registration Services (MERS).[1] Kitsap Bank endorsed the note over to Countrywide N.A., which endorsed it to Countrywide Home Loans Inc., which converted it into bearer paper. The note was ultimately held by BNY.

---

[1] Clerk's Papers (CP) at 48-49.

Bayview Loan Servicing LLC was the loan servicer for BNY and maintained the loan documents.

In February of 2009, Grahn defaulted on the installment note and has made no subsequent payments. That March, Grahn received a notice of intent to accelerate.

In January 2010, Grahn filed for chapter 7 bankruptcy, culminating in an order discharging his unsecured debts. That May, MERS assigned "all beneficiary interests" under the deed of trust to BNY but omitted a portion of its formal name, "CWALT INC." In October 2010, a nonjudicial trustee's sale occurred. A trustee's deed conveyed the property to BNY. BNY recorded and then in April 2011, re-recorded the trustee's deed.

In 2013, BNY filed an unlawful detainer action to obtain possession of the property. BNY took a voluntary dismissal of the unlawful detainer action and later commenced a quiet title action. Because MERS omitted a portion of BNY's formal name on the May 2010 assignment of the deed of trust , BNY requested that the court unwind the 2010 trustee's sale. In 2014, the court issued an order "per the agreement of the parties" that the 2010 trustee's sale and resulting trustee's deeds were void.[2]

In 2017, Grahn filed this declaratory judgment action to quiet title and declare the deed of trust "void and [expunge it] from the auditor's records."[3] He

---

[2] CP at 16.
[3] CP at 26.

filed a motion for summary judgment, and BNY filed a cross motion for summary judgment to dismiss the quiet title action and to declare the deed of trust valid.

On March 1, 2018, MERS issued a "Second Corrective Corporate Assign Deed of Trust" to include the formal name of BNY and correct the May 2010 assignment of the deed of trust.[4]

On April 13, 2018, the trial court granted summary judgment in favor of BNY and dismissed Grahn's quiet title action.

Grahn appeals.

## ANALYSIS

### I. Lawful Beneficiary

Grahn argues that BNY was not a lawful beneficiary because BNY "never held any [interest] in the underlying debt."[5]  He also contends that the evidence BNY presented at summary judgment violated CR 56(e) and was improperly considered.

We review an order granting summary judgment de novo.[6]  Summary judgment is appropriate "'only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.'"[7]  We view

---

[4] CP at 92.

[5] Appellant's Br. at 13.

[6] Loeffelholz v. Univ. of Wash., 175 Wn.2d 264, 271, 285 P.3d 854 (2012).

[7] Bavand v. OneWest Bank, 196 Wn. App. 813, 824-25, 385 P.3d 233 (2016) (quoting Scrivener v. Clark Coll., 181 Wn.2d 439, 444, 334 P.3d 541 (2014)) (citing CR 56(c)).

the evidence in the "light most favorable to the nonmoving party."[8] We review an objection raised at summary judgment de novo based only on a party's argument below.[9]

The person entitled to enforce an instrument or note is the holder of the note.[10] The "holder" of a note is "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession."[11] A note endorsed in blank is payable to the bearer and "may be negotiated by transfer of possession alone."[12] The holder of the note, which is the evidence of the debt, has the power to enforce the deed of trust securing the note because the deed of trust follows the note by operation of law.[13]

And "a holder of a promissory note need not produce the original note to prove the right to enforce a deed of trust."[14] "A declaration . . . stating that the beneficiary is the actual holder of the promissory note . . . shall be sufficient proof [of the status to enforce the note]."[15] "Statements made by a 'custodian or other

---

[8] Loeffelholz, 175 Wn.2d at 271 (citing CR 56(c)).

[9] Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.3d 301 (1998).

[10] RCW 62A.3-301; see also Brown v. Dep't of Commerce, 184 Wn.2d 509, 524-25, 359 P.3d 771 (2015); Bain v. Metro. Mortg. Grp., Inc., 175 Wn.2d 83, 88-89, 104, 285 P.3d 34 (2012).

[11] RCW 62A.1-201(b)(21)(A).

[12] RCW 62A.3-205(b).

[13] Bain, 175 Wn.2d at 104 (the deeds of trust act "[c]ontemplates that the security instrument will follow the note, not the other way around").

[14] RCW 61.24.030(7)(a).

[15] Bavand, 196 Wn. App. at 824 (emphasis omitted) (alteration in original) (quoting RCW 61.24.030(7)(a)).

qualified witness' in a declaration based on the declarant's review of business records satisf[ies] CR 56(e)."[16]

Here, the materials submitted on summary judgment establish that BNY is the holder of the note. BNY provided a copy of the promissory note with Grahn's initials on each page in blue ink. Thus, BNY possessed and was the holder of the note.[17] BNY also submitted a declaration from Bayview's litigation manager, Gerardo Trueba, which establishes that Bayview is the "agent/servicer and [attorney-in-fact]" of BNY, that BNY is "the beneficiary of the note and accompanying deed of trust," and that BNY is the "current noteholder and beneficiary of the note and accompanying deed of trust."[18] BNY's copy of the promissory note and Trueba's declaration satisfy CR 56(e) and establish BNY is the holder of the note.

In his opening brief, Grahn makes general arguments about the requirements of CR 56(e), stating in part that BNY's evidence "was built on . . . unsworn, uncorroborated, and improper foundation solely created and presented by the attorneys."[19]

---

[16] Id. at 826.

[17] We also note that Grahn's second request for judicial notice refers to a copy of the promissory note identical to the note described above as "Copy received by BNY-Trust from prior court action." CP at 42. Grahn also contends the note was "bearer paper" so whoever has physical possession is the holder of the note. CP at 247. To the extent this was an acknowledgment that BNY had received the note, it is consistent with other evidence that BNY is the holder of the note.

[18] CP at 88-89.

[19] Appellant's Br. at 28.

But Grahn did not raise these specific objections to Trueba's declaration in the trial court. In his objection to the trial court, Grahn challenged Trueba's personal knowledge as a loan servicer, asserting that BNY "is the only entity that has direct knowledge of [BNY's] rights, entitlements, and asset ownership."[20] But Trueba's declaration establishes he is a litigation manager at Bayview, he has personal knowledge of the policies, practices, and procedures of Bayview in servicing mortgage loans, and he is familiar with Bayview's record keeping of the underlying loan documents. As the agent and the attorney-in-fact for BNY, Bayview has the authority to file declarations authenticating loan documents.[21]

Next, Grahn contends that when Kitsap Bank assigned "all beneficiary interests" in the deed of trust to MERS and subsequently transferred all interests in the promissory note to Countrywide, the deed of trust and the note split.[22] Thus,

---

[20] CP at 244. The objection filed in the trial court included that Trueba's "conclusory comments . . . derived from hearsay-based information and belief" which is a violation of CR 56(e). CP at 248. But Grahn did not point to anything specific in Trueba's declaration. The only portion of Trueba's declaration that is made on information and belief is the portion of the declaration that states Grahn's principal balance.

[21] See Winters v. Quality Loan Serv. Corp. of Wash., 11 Wn. App. 2d 628, 646, 454 P.3d 896 (2019) (an unrebutted declaration by servicer and attorney-in-fact that a bank is the holder of the note satisfies the statutory requirement for proof of a beneficiary). For the first time in his reply brief, Grahn made specific objections to Trueba's declaration. But we will not consider a claim raised for the first time on appeal that "there is no evidence that the [servicer's] employee had personal knowledge about the location of the note." Id. Further, we do not consider arguments raised for the first time in a reply brief. Bergerson v. Zurbano, 6 Wn. App. 2d 912, 926, 432 P.3d 850 (2018) (citing RAP 10.3(c)). Therefore, Grahn's general challenge to lack of personal knowledge of anyone other than BNY fails in the face of Trueba's unrebutted declaration.

[22] Appellant's Br. at 15-17.

he argues, any subsequent owner of the deed of trust held no security interest in the debt.

Grahn relies on Bain v. Metropolitan Mortgage Group, Inc. for the above proposition.[23] Our Supreme Court in Bain held that "MERS is an ineligible 'beneficiary'. . . if it never held the promissory note or other debt instrument secured by the deed of trust.[24] But the court in Bain cast doubt upon a theory that involvement of MERS would automatically constitute a "split" rendering a deed of trust unenforceable: "If, for example, MERS is in fact an agent for the holder of the note, likely no split would have happened."[25] Further, the Ninth Circuit has held that the split-the-note theory "has no sound basis in law or logic," while other courts applying Washington law have routinely rejected the premise of Grahn's "split-the-note" theory.[26]

---

[23] 175 Wn.2d 83, 285 P.3d 34 (2012).

[24] Id. at 110.

[25] Id. at 112.

[26] In Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034 (2011), the Ninth Circuit explained that the split-the-note theory has no sound basis in law or logic and should be rejected. The court recognized that splitting a note from a deed of trust is not problematic as long as, at the time of foreclosure, the party attempting to foreclose holds the note or is acting on behalf of the noteholder. In other words, a split does not render the note and/or the deed permanently unenforceable. See, e.g., Rahman v. Greenpoint Mortg. Funding, No. 2:19-cv-530, 2019 WL 3550314, at *4 (U.S. Dist. Ct. W.D. Seattle) ( "This unsupported legal theory has . . . been roundly and uniformly rejected."); Bavand v. OneWest Bank FSB, No. C12-0254JLR, 2013 WL 1208997, at *2 (W.D. Wash. Mar. 25, 2013) (citing Cervantes, 656 F.3d at 1044-45 ("[T]he 'split the note' theory–the argument that if ownership of a deed of trust is split from ownership of the underlying promissory note, one or both of those documents becomes unenforceable" has been rejected.)); Canzoni v. Countrywide Bank, No. C16-5239-RBL, 2016 WL 3251403, at *3 (W.D. Wash. June 13, 2016) (Some courts

---

In a related argument, Grahn contends that because only MERS had been assigned "all beneficiary interest" in the deed of trust at the time Grahn filed for bankruptcy, there was no security for the note.[27]  Grahn argues that because the debt was "unsecured" the discharge in bankruptcy must have discharged the note, an "unsecured" debt.[28]

But, as discussed, the deed of trust followed the note as a matter of law, so there is no support for Grahn's split-the-note theory.  The note was not listed by Grahn as an unsecured debt on the petition for bankruptcy or bankruptcy schedules, and the order of discharge did not extend to any deed of trust. Because the note was secured by the deed of trust it survived bankruptcy, Grahn's argument fails.

II. Statute of Limitations

Grahn contends that the six-year limitations period to enforce the note started once the note was fully accelerated in 2009.  Grahn argues that BNY's efforts to quiet title in its favor filed in 2018 are barred by the statute of limitations.

The statute of limitations for "[a]n action upon a contract in writing, or liability express or implied arising out of a written agreement" is six years.[29] "'[W]hen recovery is sought on an obligation payable by installments, the statute of

---

describe and reject the "split-the-note" theory as an incorrect notion that "the Deed 'follows the Note' into the abyss.").

[27] Appellant's Br. at 17-18.

[28] Id.

[29] RCW 4.16.040(1).

limitations runs against each installment from the time it becomes due; that is, from the time when an action might be brought to recover it.'"[30]  After a proceeding is declared void, it never happened for legal purposes.[31]

As this court held in Merceri v. Bank of New York Mellon, a notice of intent to accelerate containing substantially the same language used in the March 19, 2009, notice here, is a statement of intent to accelerate in the future and "the final six-year period to take an action related to the debt does not begin to run until it fully matures [on the maturity date.]"[32]  And mere default alone will not accelerate the payments due on an installment note, some affirmative action is required.[33]

Here, the language of the installment note provided that the principal amount was $512,000, that the Grahns were to pay every month on the first day of each month beginning in April of 2007, and that the maturity date was March 1, 2037.  Because the Grahns defaulted but only received a notice of intent to accelerate and no other action was taken, the six-year limitations period has not run.

Grahn attempts to distinguish Merceri on various grounds.  First, Grahn argues that Merceri is being improperly raised for the first time on appeal.  But the

---

[30] Merceri v. Bank of N.Y. Mellon, 4 Wn. App. 2d 755, 759-60, 434 P.3d 84 (2018) (quoting Edmundson v. Bank of Am., 194 Wn. App. 920, 930, 378 P.3d 272 (2016)).

[31] Frias v. Asset Foreclosure Servs. Inc., 181 Wn.2d 412, 427 n.2, 334 P.3d 529 (2014).

[32] 4 Wn. App. 2d 755, 759, 434 P.3d 84 (2018).

[33] Id. at 760.

issue whether the debt had been accelerated or whether BNY was entitled to enforce the note for each ongoing unpaid installment was raised below. A party is not precluded from raising new authority for the first time on appeal of summary judgment if the issue in contention was raised below.[34] Thus, Grahn's argument fails because the acceleration issue was before the trial court.

Second, Grahn contends that Merceri should be distinguished because in Merceri, the debtor first initiated foreclosure six years after the notice of acceleration was given, but here, BNY immediately initiated foreclosure, which Grahn contends "confirm[ed] [BNY's] intent [to commence acceleration.]"[35] However, the trial court declared the nonjudicial trustee's sale that occurred on October 8, 2010 void. And after a proceeding is declared void, it never happened for legal purposes.[36] Therefore, Grahn's reliance on the trustee's sale to prove BNY's intent to commence acceleration is misguided.

Third, Grahn contends that unlike in Merceri, here, the notice of trustee's sale reflects the debt had been accelerated. But the notice of trustee's sale stated only that Grahn defaulted on $23,556.89. That specific default amount is not contradicted by the recitation that the principal balance owing was $501,216.54. A notice indicating the amount in default was $23,556.89 on the note, which had a principal balance of $501,216.54, does not reflect an acceleration in any sense.

---

[34] Zonnebloem, LLC v. Blue Bay Holdings, LLC, 200 Wn. App. 178, 183 n.1, 401 P.3d 468 (2017) (citing RAP 2.5(a)).

[35] Appellant's Reply Br. at 12.

[36] Frias, 181 Wn.2d at 427 n.2.

Here, the notice of trustee's sale did not purport to demand or announce an acceleration of the note. And the statements issued through October 2017 had no reference to an accelerated amount. Because the installment loan was not accelerated until late 2017, at the earliest, the six-year limitation period has not run.[37]

III. Inconsistency and Judicial Estoppel

Finally, Grahn challenges the inconsistency of BNY's claim that it can enforce the deed of trust. Specifically, Grahn contends BNY's 2013 pleadings never mentioned that it received the deed of trust, but its 2017 pleadings argued that it received the deed of trust "as a matter of law."[38] He argues BNY is "violating judicial estoppel and not incorporating the prior asserted facts."[39] He also points to some 2014 trial court comments expressing uncertainty whether the deed of trust was automatically reinstated after the court voided the 2010 trustee's sale.

First, his arguments do not adequately account for the March 1, 2018 "Second Corrective Corporate Assign Deed of Trust." He cites no authority precluding the correction of an incomplete name in a prior assignment.

---

[37] We need not address the parties' alternative arguments regarding tolling.

[38] Appellant's Br. at 29.

[39] Id.

Second, judicial estoppel is an equitable doctrine that prevents a party from asserting one position in a court proceeding and later asserting "a clearly inconsistent position."[40]

> Three "core," nonexhaustive factors guide a trial court's determination of whether to apply judicial estoppel: (1) whether the party's later position is clearly inconsistent with its earlier position, (2) whether acceptance of the later inconsistent position would create the perception that either the first or the second court was misled, and (3) whether the assertion of the inconsistent position would create an unfair advantage for the asserting party or an unfair detriment to the opposing party.[41]

"Before the doctrine of judicial estoppel may be applied, a party's initial position—which is subsequently contradicted in a different proceeding—must be accepted by the court to which it is presented."[42]  Grahn does not establish BNY has taken "clearly inconsistent" positions as required for judicial estoppel.  The failure to mention receiving the deed of trust in 2013 is not "clearly inconsistent" with an allegation in 2017 that it received the deed of trust "as a matter of law."

And he provides no citations to the record to show that the trial court squarely accepted a proposition that BNY never possessed the deed of trust.  At the hearing on the initial summary judgment motion in 2014, the court stated, "I don't believe [Grahn] has objected to the court voiding the [foreclosure] sale, that

---

[40] Taylor v. Bell, 185 Wn. App. 270, 281, 340 P.3d 951 (2014).

[41] Id. at 282 (footnote omitted).

[42] Id. at 273.

13

is the nonjudicial sale that took place before, and so that does put back in place the deed of trust [to BNY]."[43]

Finally, to the extent there may be exceptions to the doctrine that as a matter of law, the deed of trust follows the note, Grahn cites no authority supporting an exception in this setting.

Therefore, we affirm.

WE CONCUR:

---

[43] Report of Proceedings (April 25, 2014) at 20; CP at 142.